**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:14-CV-680-MOC-DSC**

| | |
|---|---|
| GEMINI DRILLING AND FOUNDATION, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| J.E. DUNN CONSTRUCTION COMPANY and LS3P ASSOCIATES LTD., | ) ) ) ) ) |
| Defendants. | ) ) ) |

**ORDER**

**THIS MATTER** is before the Court on "Defendant J.E. Dunn Construction Company's Motion to Stay," Doc. 38, as well as the parties' briefs and exhibits. Docs. 39 and 40.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the Court will grant the Motion, as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the construction of a parking deck on the campus of the University of North Carolina at Charlotte ("UNCC"). Defendant J.E. Dunn Construction ("J.E. Dunn") was the general contractor for the project. On March 1, 2011, J.E. Dunn entered into a written single prime contract ("Prime Contract") with the Owner of the Project, the State of North Carolina by and through UNCC, for the construction of Parking Deck "I" (the "Project"). Defendant LS3P Associates Ltd. ("LS3P") provided architectural design and construction phase services for the

Project pursuant to written agreement with the State. These services included recommending acceptance or denial of changes to the project.

J.E. Dunn solicited bids for a subcontractor to drill shafts and pour concrete piers for the parking deck. J.E. Dunn entered into a subcontract agreement with Gemini Drilling and Foundation, LLC ("Gemini") dated May 23, 2011. Gemini agreed to perform all work associated with drill shafts and concrete piers necessary for construction of the Project ("Subcontract") (hereafter, Prime Contract and Subcontract collectively the "Contract Documents").

Gemini alleges that it encountered subsurface conditions that differed from those anticipated in the project documents. Gemini further alleges that it incurred additional costs as a result of those conditions. Gemini alleges that representatives of J.E. Dunn and LS3P instructed them to "keep drilling" while additional compensation was worked out, and that a representative of J.E. Dunn represented to Gemini that they would be compensated for the additional drilling time and increase in costs. On August 22, 2011, J.E. Dunn met with Gemini to discuss how to calculate the additional compensation. On August 29, 2011, J.E. Dunn emailed a document titled "PCI [Proposed Change Item] 004" with documentation of Gemini's additional costs for the piers to LS3P for review. LS3P denied PCI 004 in October 2011.

On October 13, 2014, pursuant to Rule 3(a)(1) and (2) of the North Carolina Rules of Civil Procedure, Gemini filed an Application and Order Extending Time to File Complaint in Mecklenburg County Superior Court. On November 3, 2014, Gemini filed its Complaint in state court. Gemini sued J.E. Dunn for fraudulent inducement based upon the Subcontract, breach of the Subcontract, unfair and deceptive trade practices, and punitive damages for willful and wanton tortious conduct.

The action was subsequently removed to this Court on December 9, 2014.

On January 15, 2015, J.E. Dunn filed its Answer and affirmative defenses. J.E. Dunn also brought a counterclaim for breach of contract. Doc. 18. Defendant LS3P filed a Motion for Judgment on the Pleadings (Doc. 14) which was denied on May 6, 2015. See Doc. 33. J.E. Dunn then filed a Motion for Judgment on the Pleadings (Doc. 29) on April 2, 2015, which was denied on May 5, 2015. See Doc. 35. On July 22, 2015, J.E. Dunn filed this Motion to Stay.

This Motion has been fully briefed and is ripe for determination.

## II. DISCUSSION

Article 1 of Gemini's Subcontract with J.E. Dunn contains a "flow-down" provision. This provision incorporates the terms of the Prime Contract between J.E. Dunn and the State. It includes procedures for disputed claims to be submitted directly to the Department of Administration. It further states, that "[i]n performing the Work, Subcontractor agrees to stand in the place of Contractor and hereby assumes all of the duties, obligations and responsibilities of Contractor under the Prime Contract that Contractor owes to the Owner with respect to the Work. Accordingly, Subcontractor agrees to be bound to the Contractor by the terms and conditions of the Prime Contract[.]" Doc. 18, Ex. 1.

More specifically, the Subcontract provides, in relevant part:

27. Disputes.

In the event of any dispute between Subcontractor and Contractor relating to this Subcontract or a breach thereof, which involves the correlative rights and duties of Owner, then the dispute shall be decided in accordance with the Prime Contract, and Subcontractor, and its Sureties, shall be bound to Contractor to the same extent that Contractor is bound to Owner by the terms of the Prime Contract and by any decisions or determinations made thereunder by an authorized person, board, court or other tribunal. . . . *Subcontractor agrees to exhaust all remedies available under the Prime Contract, under bonds not furnished by Contractor, and under applicable lien law against persons and entities other than the Contractor prior to commencing litigation against the Contractor. In the event Subcontractor commences an action in any court, Subcontractor agrees to stay said action pending exhaustion of remedies.*

> (emphasis added).

Id.

> The Prime Contract states in Article 20-Claims for Extra Costs:
>
> c. Should a claim for extra compensation by the contractor be denied by the designer or owner, and cannot be resolved by a representative of the State Construction Office, the contractor may request a mediation in connection with GS 143-128(fl) in the dispute resolution rules adopted by the State Building Commission. If the contractor is unable to resolve its claim as a result of mediation, the contractor may pursue the claim in accordance with the provisions of G.S. 143-135.3[.]"

Doc. 18, Ex. 7. The Prime Contract then proceeds to enumerate, in part, the administrative procedures governing dispute resolution in N.C. Gen. Stat. § 143-135.3 where the Department of Administration or the University of North Carolina are parties.

Section 143-135.3 provides a two-tiered process for claims for extra compensation. First, the contractor must submit a verified claim to the director of the Office of State Construction ("OSC"). If the contractor objects to the director's decision, it may appeal in one of two ways: (1) by instituting a hearing before an Administrative Law Judge; or (2) "in lieu of" that option, by filing a complaint in Wake County Superior Court. N.C. Gen.Stat. § 143–135.3(c1), (d).

In an action based upon diversity of citizenship, the district court must apply the substantive law of the state in which it sits and federal procedural law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211 (1996). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983) (noting the well-recognized inherent power of district courts to grant discretionary stays "under their general equity powers and in the efficient management of their

dockets to grant relief"). When the parties have freely contracted for dispute resolution procedures to apply, courts shall grant a motion to stay for exhaustion of such procedures, unless it clearly appears that such procedures are "inadequate or unavailable." United States v. Grace & Sons, 384 U.S. 424, 430 (1966).

North Carolina law requires that all general contractors on public construction projects with the University of North Carolina exhaust their administrative remedies prior to filing an action for extra compensation. See N.C. Gen. Stat. § 143-135.3; see also Porter v. N. Carolina Dep't of Ins., 40 N.C. App. 376, 379, 253 S.E.2d 44, 46 (1979) ("when the legislature has established an effective administrative remedy, it is exclusive").

After the denial of PCI 004 by LS3P, J.E. Dunn requested a mediation with the State. This action was consistent with Art. 20 of the Prime Contract and the dispute resolution rules adopted by the State. On February 20, 2012, mediation was conducted at the office of counsel for J.E. Dunn. Representatives from the State, Gemini, and J.E. Dunn were present. The parties were unable to resolve the claim for extra compensation.

J.E. Dunn submitted a verified claim on behalf of Gemini to the OSC on March 21, 2012. Consistent with N.C. Gen. Stat. § 143– 135.3, J.E. Dunn filed suit in Wake County Superior Court in furtherance of Gemini's claim for extra compensation styled J.E. Dunn Construction Company v. State of North Carolina through the University of North Carolina at Charlotte, et al., 15-CVS-7161.

The general rule allows parties to contract for dispute resolution procedures which, in effect, turn breach of contract claims into claims for relief under the contract. Parties are bound to exhaust those procedures unless they are "inadequate or unavailable[.]" Seal & Co., Inc. v. A.S. McGaughan Co., Inc., 907 F.2d 450, 453 (4th Cir. 1990) (quoting United States v. Grace & Sons,

384 U.S. 424, 430 (1966)). In addition, the "inadequacy or unavailability of administrative relief must clearly appear before a party is permitted to circumvent his own contractual agreement." Id. The North Carolina Court of Appeals has held that a construction subcontract may bind the subcontractor to comply with legislatively enacted administrative procedures as a condition precedent to commencing a lawsuit against the prime contractor. See Nello L. Teer Co. v. Jones Bros., 641 S.E.2d 832, 836 (2007)(citing United States v. Grace & Sons, Inc., 384 U.S. 424, 430 (1966)).

Gemini argues that J.E. Dunn waived any right to stay the proceedings by filing an Answer and Counterclaim. However, J.E. Dunn pled Gemini's failure to exhaust the applicable administrative procedures in its Answer and asserted a Counterclaim for breach of contract for Gemini's failure to exhaust those procedures.

Gemini further argues that the administrative procedures are inapplicable to its extra contractual tort claims brought against Defendants. Gemini asserts these claims for fraudulent inducement and unfair and deceptive trade practices based upon J.E. Dunn's promise of additional compensation for the increased drilling.

The Court finds that the terms of the Prime Contract are incorporated within the Subcontract. Gemini agreed to be bound by the terms of the Prime Contract between J.E. Dunn and the State, which require the parties to exhaust administrative remedies for *any* claim involving the correlative rights and duties of the State as Owner. Consequently, the Court finds that the administrative remedies available under the Prime Contract must be exhausted before Gemini can proceed here. Gemini has not shown that these administrative procedures are inadequate or unavailable. For the foregoing reasons, the Court **GRANTS** "Defendant J.E. Dunn Construction Company's Motion to Stay," Doc. 38.

The Clerk is directed to send copies of this Order to counsel for the parties; <u>and to the Honorable Max O. Cogburn, Jr.</u>

**SO ORDERED.**

Signed: September 15, 2015

David S. Cayer
United States Magistrate Judge